Citation Nr: 1722231 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 12-21 193 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Reno, Nevada


THE ISSUES

1. Entitlement to service connection for diabetes mellitus, due to exposure to herbicide agents.

2. Entitlement to service connection for peripheral neuropathy, to include as secondary to diabetes mellitus, type II.

3. Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD) for the period prior to August 20, 2012, and in excess of 50 percent thereafter.


REPRESENTATION

Appellant represented by: Robert V. Chisholm, Esq.




ATTORNEY FOR THE BOARD

R. Behlen, Associate Counsel


INTRODUCTION

The appellant served on active duty in the Air Force from December 1966 to December 1970.

This matter originally came before the Board of Veterans' Appeals (Board) from August 2010 and August 2011 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Reno, Nevada.

Entitlement to service connection for diabetes mellitus and entitlement to service connection for peripheral neuropathy were denied in an August 2010 rating decision. The appellant filed a timely Notice of Disagreement (NOD), received in November 2010. 

The appellant testified before a Decision Review Officer in November 2010. The appellant's spouse and daughter were present as witnesses. A transcript is of record. The issue of entitlement to an increased rating for PTSD was not discussed.

A Statement of the Case (SOC) was issued in June 2012. The appellant filed a timely VA Form 9, received in July 2012. A Supplemental Statement of the Case (SSOC) was issued in August 2013.

In a February 2015 decision, the Board denied entitlement to service connection for diabetes mellitus and remanded the issue of entitlement to service connection for peripheral neuropathy.

The appellant appealed the Board's February 2015 denial of entitlement to service connection for diabetes mellitus to the United States Court of Appeals for Veterans Claims (Court). While that matter was pending before the Court, the appellant's attorney and a representative of VA's Office of the General Counsel filed a Joint Motion for Partial Remand in August 2015. In an August 2015 order, the Court granted the motion, vacated that part of the Board's February 2015 decision that denied entitlement to service connection for diabetes mellitus, and remanded the matter for readjudication.

The Board notes that, in the August 2015 Joint Motion for Partial Remand, it is stated that the appellant does not contest the Board's denial of entitlement to service connection for diabetes mellitus on a direct basis other than due to exposure to an herbicide agent. Thus, the issue before the Board is limited to whether the appellant is entitled to service connection for diabetes mellitus due exposure to an herbicide agent.

The RO issued an SSOC in May 2017 with respect to the appellant's claim of entitlement to service connection for peripheral neuropathy.

In an August 2011 rating decision, the RO granted service connection for PTSD and assigned an initial rating of 30 percent, effective September 13, 2010. The appellant submitted a statement, received in September 2011, which, viewing it in the light most favorable to the appellant, the Board will accept as an NOD. An SOC was issued in April 2014, which also continued the 30 percent rating for PTSD. The appellant's VA Form 9 was received in July 2014, more than 60 days after the SOC was issued. Although this appeal was not timely, the RO treated it as such and the Board will accept jurisdiction. See Percy v. Shinseki, 23 Vet. App. 37, 45 (2009) (discussing actions which may constitute a waiver of the requirement for filing a timely substantive appeal). 

The appellant's evaluation of his service-connected PTSD disability was increased from 30 percent to 50 percent, effective August 20, 2012, in a September 2016 rating decision. An SSOC was issued in October 2016. The appellant had requested a Board hearing by live teleconference on the July 2014 VA Form 9, but this request was withdrawn per correspondence from the appellant's attorney, received in April 2017. The Board also notes that although additional evidence has been associated with the record on appeal since the October 2016 SSOC, the appellant has waived initial RO consideration of that evidence. 

The issues of entitlement to service connection for diabetes mellitus, type II, and peripheral neuropathy are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

For the entire period on appeal, the appellant's PTSD was manifested by no more than occupational and social impairment with reduced reliability and productivity; there was not occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood; or total social and occupational impairment.


CONCLUSION OF LAW

The criteria for an initial disability rating of 50 percent, but not higher, for PTSD have been met or approximated for the entire period on appeal. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Veterans Claims Assistance Act of 2000 (VCAA)

As a preliminary matter, the Board finds that no further notice or development action is necessary to satisfy VA's duties to the appellant under the VCAA with respect to the issue now being decided. In a September 2010 letter issued prior to the initial decision on the claim, VA notified the appellant of the information and evidence needed to substantiate and complete his claim and of what part of that evidence he was to provide and what part VA would attempt to obtain for him. 38 U.S.C.A. § 5103(a); 38 C.F.R. §3.159(b) (1). This letter included the additional notification requirements imposed in Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

Moreover, in this appeal, the appellant challenges the initial evaluation assigned following the grant of service connection for his PTSD. In Dingess, the Court held that, in cases such as this, where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service-connection claim has been more than substantiated, it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Id. at 490-91. 

With respect to VA's duty to assist, the record shows that VA has undertaken all necessary development action. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The appellant's service treatment records, and all available and relevant post-service clinical records which the appellant has specifically identified and authorized VA to obtain, are associated with the claims file. 38 U.S.C.A. § 5103A(c); 38 C.F.R. § 3.159(c) (2), (3). 

The appellant has also been afforded adequate VA medical examinations in connection with his claim for a higher disability rating for PTSD. The Board finds that the reports of these examinations provide the necessary medical opinions as well as sufficient findings for the pertinent schedular criteria. 38 C.F.R. § 3.159(c)(4)(C)(iii); see also Massey v. Brown, 7 Vet. App. 204 (1994). 

Moreover, neither the appellant nor his representative has argued that his service-connected PTSD has increased in severity since he was last examined for VA compensation purposes in August 2012. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4); Palczewski v. Nicholson, 21 Vet. App. 174, 182 (2007) (the mere passage of time does not require VA to provide a new medical examination).

For the reasons set forth above, and given the facts of this case, the Board finds that no further notification or development action is necessary on the issue now being decided. 

II. Applicable Law

 A. Standard of Proof

The standard of proof to be applied in decisions on claims for VA benefits is set forth in 38 U.S.C.A. § 5107(b). Under that provision, VA shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990). "It is in recognition of our debt to our veterans that society has [determined that,] [b]y tradition and by statute, the benefit of the doubt belongs to the veteran." See Gilbert, 1 Vet. App. at 54.


 B. Increased Evaluations

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Separate diagnostic codes identify the various disabilities. Where there is a question as to which of two evaluations should be applied, the higher evaluation will be assigned if that disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability is resolved in favor of the veteran. 38 C.F.R. § 4.3.

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991).

Where a claimant appeals the initial rating assigned following an award of service connection, evidence contemporaneous with the claim for service connection and with the rating decision granting service connection would be most probative of the degree of disability existing at the time that the initial rating was assigned and should be the evidence "used to decide whether an [initial] rating on appeal was erroneous. . . ." Fenderson v. West, 12 Vet. App. 119, 126 (1999). If later evidence obtained during the appeal period indicates that the degree of disability increased or decreased following the assignment of the initial rating, "staged" ratings may be assigned for separate periods of time based on facts found. Id.

 C. Posttraumatic Stress Disorder

 i. Rating Criteria

Under the rating criteria for mental disorders, a noncompensable rating is warranted for a mental disability that has been formally diagnosed, but its symptoms are not severe enough either to interfere with occupational and social functioning or to require continuous medication. 38 C.F.R. § 4.130, DC 9400.

A 10 percent rating is assigned when there is occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or where symptoms are controlled by continuous medication. Id.

A 30 percent rating is warranted for occupational and social impairment with occasional decrease in efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). Id. 

A 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relationships, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

Finally, a 100 percent evaluation is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

In Maurehan v. Principi, 16 Vet. App. 436 (2002), the U.S. Court of Appeals for Veterans Claims held that the use of the term "such as" in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Accordingly, the evidence considered in determining the level of impairment under section 4.130 is not restricted to the symptoms provided in the diagnostic code. Rather, VA must consider all symptoms of a claimant's disability that affect the level of occupational and social impairment, including, if applicable, those identified in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders.

More recently, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that "a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration." Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116 (Fed. Cir. 2013). The Federal Circuit explained that in the context of a 70 percent rating, section 4.130 "requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas." Id. at 118. The Federal Circuit indicated that "[a]lthough the veteran's symptomatology is the primary consideration, the regulation also requires an ultimate factual conclusion as to the veteran's level of impairment in 'most areas.'" Id.

 ii. Global Assessment of Functioning (GAF) Scores

According to the Fourth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, a GAF score is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); Richard v. Brown, 9 Vet. App. 266 (1996) (citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM-IV)).

The Board notes that an interim final rule was issued on August 4, 2014, that replaced the DSM-IV with the DSM-5. GAF scores have been removed from DSM-5. The provisions of this interim final rule, however, do not apply to the instant case, as these provisions only apply to applications for benefits that are received by VA or that are pending before the RO on or after August 4, 2014. See 79 Fed. Reg. 45,093, 45,094 (Aug. 4, 2014). VA adopted as final, without change, the interim final rule, effective March 19, 2015. 80 Fed. Reg. 53, 14,308 (March 19, 2015). 

A GAF score of 61 to 70 represents mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships. A GAF score of 51 to 60 represents moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with coworkers). A GAF score of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF score of 31 to 40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant), or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work). Lesser scores reflect increasingly severe levels of mental impairment. American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders, 4th Ed. (1994) (DSM-IV).

While particular GAF scores are not contained in the VA schedule of ratings for mental disorders, they are a useful tool in assessing a veteran's disability and assigning ratings. 38 C.F.R. § 4.130. However, they are just one of many factors considered when determining the appropriate rating.


III. Analysis

As discussed above, entitlement to service connection for PTSD was granted in an August 2011 rating decision. An initial 30 percent rating was assigned, effective September 13, 2010. The rating was increased to 50 percent, effective August 20, 2012, in a September 2016 rating decision.

 A. Evidence

The appellant was seen by his regular VA psychologist in June 2010. The appellant reported chronic depression, anxiety, irritability, labile mood swings, periodic flashbacks and nightmares, and social withdrawal. The VA psychologist noted that the appellant was oriented to person, place, and time. It was noted that the appellant's thoughts and memory were within normal limits. The appellant denied any suicidal plans. The VA psychologist noted that there was no evidence of hallucinations, delusions, or paranoid ideation. It was also noted that the appellant was negative on the suicide screening procedure, having answered each question in the negative. The VA psychologist noted that there was no evidence of manipulation or malingering, nor was there evidence of a personality disorder. The VA psychologist assigned a GAF score of 50.

The appellant was seen again by his regular VA psychologist in September 2010. The appellant reported that he continued to suffer from chronic depression, anxiety, irritability, labile mood swings, periodic flashbacks and nightmares, and social withdrawal. The appellant stated that whenever he thought of his friend's death, which occurred during active service in Thailand, he would get emotionally choked up and that multiple negative emotional experiences would be brought back. The appellant was oriented as to person, place, and time. The appellant did not have suicidal plans. The VA psychologist noted that there was no evidence of hallucinations, delusions, paranoid ideation, manipulation, or malingering. A GAF score of 45 was assigned.

The appellant was afforded a contracted examination by a clinical psychologist in June 2011. It was noted that the appellant was not taking any psychotropic medications at the time. The appellant reported that he experienced depression, anxiety, insomnia, flashbacks, nightmares, and social withdrawal, and that all of these symptoms were severe and experienced daily. The appellant reported that he had been married for 42 years, worked for 20 years as a fast food manager, and had been working for 19 years as a night auditor. Marital or family problems were denied. The appellant stated that he had friends, denied any problems with them, and stated that he would go to movies and go out to dinner with his friends. The appellant stated that he had not consumed alcohol in 26 years. The VA examiner noted that the appellant had good family and social relationships and was working steadily. It was noted that the appellant's psychosocial functioning appeared to be good, the appellant's thought processes were not impaired, the appellant did not experience any hallucinations or delusions, and his interpersonal behavior and eye contact were normal. The appellant denied having suicidal or homicidal thoughts or plans, and denied assaultiveness. The appellant was noted to have no impairment in maintaining minimal hygiene or in performing activities of daily living. The appellant was noted to be fully oriented to person, place, name, date, age, and purpose. It was reported that the appellant had no difficulties with attention or concentration, and that there was no impairment to the appellant's memory. The examiner noted that no obsessive or ritualistic behaviors were present. Although the appellant tended to ramble in a tangential manner, his quality of speech was within normal limits. The examiner noted that no panic attacks were clinically present or reported, and that there was no evidence of panic attacks in the claims file. The examiner noted that depression and anxiety were present, but no impulse problems were observed. The appellant was noted to complain of insomnia, averaging five to six hours of sleep per night. The examiner noted that flashbacks, nightmares, depression, anxiety, irritability, labile mood, and social withdrawal were symptoms of the appellant's PTSD and that they were experienced daily and were of moderate severity. The examiner opined that the appellant's mood was significantly affected by memories of and re-experiencing his in-service incidents. The examiner opined that there was an occasional decrease in work efficiency or intermittent periods of inability to perform occupational tasks due to PTSD signs and symptoms, but generally satisfactory function, as routine behavior, self-care, and conversation were normal. The appellant was assigned a GAF score of 55. 

The appellant was afforded a VA examination in August 2012. The VA physician opined that the appellant had occupational and social impairment with reduced reliability and productivity. The appellant reported being happily married for nearly 44 years. He also reported that he gets along very well with his daughter, and has ever since he became sober. The appellant reported that he currently had no hobbies because he had lost interest in his prior hobbies. He stated that he gets bored and discouraged easily. He reported that he would go to the movies with his wife. The appellant stated that he worked overnight as a night auditor. He reported that he gets six to seven hours of interrupted sleep, because things from his military days and thoughts about his current work would wake him up. The appellant reported that he had never been fired from a job. Although he has held his current job for 19 years, he describes that it has become very stressful and is no longer fun to work there because of new ownership, and that everyone there is under stress. The appellant reported that he had not taken any medication for his PTSD and that he used to drink and work 70 hours a week to keep his mind off of PTSD. The appellant described his symptoms as anxiety, lashing out at other employees. He stated that he wanted to quit his job but was not in a position to do so. The appellant stated that, although there were times during which he wanted to drink again, he has remained sober for 26 years. The appellant denied suicidal thoughts. The VA physician noted that the appellant ambulated without any difficulty and was dressed appropriately. The VA physician also noted that the appellant had pill-rolling movements of his fingers on occasion, both during the examination and after the appellant left the VA physician's office. The appellant was also noted to have involuntary dorsiflexion of his feet. The appellant stated that he was not aware of these movements and that his primary care physician had never mentioned them. The appellant wept on a few occasions, particularly when discussing his service in Thailand. The appellant was alert and coherent, and he maintained good eye contact. The appellant's mood was anxious and dysphoric. His affect was full and appropriate. The appellant's thought process was spontaneous, relevant, and goal-directed. There was no evidence of hallucinations or delusions. The appellant did not have suicidal or homicidal ideation. The appellant was oriented as to person, place, and time. The appellant's memory, insight, and judgment were adequate.

The appellant was seen by his regular VA psychologist in December 2013. The appellant reported chronic depression, anxiety, irritability, labile mood swings, periodic flashbacks and nightmares, and social withdrawal. The VA psychologist noted that the appellant was oriented as to person, place, and time. The appellant's thoughts and memory were within normal limits. The VA psychologist stated that there was no evidence of hallucinations, delusions, paranoid ideation, manipulation, or malingering. A GAF score of 45 was assigned. The Board notes that the appellant was seen by this VA psychologist on numerous other occasions both before and after this appointment. However, the symptoms and opinions contained in those appointments' clinical notes are consistent with those reported in this clinical note. The appellant's GAF score was 45 at the lowest in these appointments.

In an April 2015 clinical note with a new VA physician, the appellant denied suicidal thoughts or attempts, although he mentioned that he tried to wreck his car many years ago while he was drinking. However, as noted above, the appellant had stopped drinking well over a decade before the effective date of his entitlement to service connection for PTSD. The appellant stated that he averaged six hours of sleep per night but never awakens feeling rested. Despite this, the appellant reported his energy and motivation to be relatively good. The appellant's concentration was noted to be fair. The appellant got emotional easily when he was reminded of his stressor. The appellant reported that pain in his back, neck, arms, and legs interfered with his sleep and limited his activities. The appellant was noted to be casually dressed and tidy. The VA physician reported that there was no abnormal motor movement. The appellant's eye contact was fair and his speech was of normal rate and volume. The appellant's thought process was noted to be coherent, while the content was focused on his anxiety and depression. The appellant denied active suicidal or homicidal ideation. The VA physician stated that no overt psychosis was noted. The appellant's mood was mediocre and he had a near-tearful affect. The appellant was cognitively grossly intact. His memory was intact and his insight and judgment were fair. A GAF score of 45 was assigned.

The appellant was also seen by a new VA psychologist in May 2015. It was noted that the VA psychologist, whom the appellant regularly saw, including in December 2013, had recently retired. The appellant reported that, after a heart attack a few months before, he had been experiencing an increase in depressive symptoms, including wanting to be left alone, not wanting to engage in usual activities, feeling down, anxious thoughts about another heart attack, and thinking about the past. The appellant denied suicidal thoughts, plan, or intent, and denied homicidal ideation. The appellant noted that he had a supportive wife, daughter, friends, and a beloved dog. The appellant was noted to have appropriate hygiene and attire. The appellant's behavior was appropriate; he was alert, cooperative, and maintained good eye contact. The appellant was oriented to person, place, time, and situation. The appellant's movement was ambulatory, with normal psychomotor activity, and had no tics or unusual movements. The appellant's speech was normal and spontaneous, with rate and rhythm within normal limits. The appellant's mood was sad and tearful when talking about his friend who died during active service, but was otherwise euthymic. The appellant's affect was appropriate and his mood was congruent. The appellant denied visual or auditory hallucinations or delusions. The appellant's thought process was logical, coherent, organized, goal-oriented, and linear. The appellant denied perceptual disturbances and had no unusual preoccupations. The appellant's insight, judgment, and memory were good. There was no gross impairment in the appellant's fund of knowledge. 

In May 2015, the appellant reported to his VA physician that he had been averaging about four hours of sleep per night for the past couple of weeks, although this was due to his recent coughing spells that frequently awakened him. The appellant reported nightmares and flashbacks twice per month. The appellant stated that his energy and motivation fluctuated and that he would get emotional easily. The appellant reported some anger issues. The appellant's concentration was fair. It was noted that there was no abnormal motor movement. The appellant had fair eye contact, his speech was of normal rate and volume, and his thought process was coherent. His thought content was focused on anxiety and depression. The appellant denied active suicidal or homicidal ideation. No overt psychosis was noted. The appellant's mood was described as mediocre with a near-tearful affect. The appellant's cognitive abilities were described as grossly intact and the appellant's memory was intact. The appellant's judgment and insight were fair. A GAF score of 45 was assigned. The appellant stated that he had tried a couple of medications for his PTSD but they put him to sleep. The VA physician prescribed the appellant a new medication.

In June 2015, the appellant had another appointment with his new VA psychologist. He reported that he was continuing to work part-time. He reported having good and bad days, but was able to cope by talking to his wife and playing with his dog. The appellant described guilt regarding his service, and how he wanted to write a letter to the family of his friend, but has been unable to do so. The appellant's hygiene was noted to be appropriate and his attire was casual. The appellant's behavior was appropriate; he was alert, cooperative, and maintained good eye contact. The appellant was oriented to person, place, time, and situation. The appellant's movement was ambulatory, he had normal psychomotor activity, and had no tics or unusual movements. The appellant's speech was normal and spontaneous, and the rate and rhythm were within normal limits. The appellant's mood was dysthymic, his affect was appropriate, and his mood was congruent. Visual or auditory hallucinations or delusions were denied. The appellant's thought process was logical, coherent, organized, goal-oriented, and linear. The appellant denied perceptual disturbances and had no unusual preoccupations. The appellant's insight and judgment were good. The appellant's memory was intact. The appellant had not gross impairment regarding his fund of knowledge. The appellant denied suicidal or homicidal ideation, plan, or intent.

The appellant also had an appointment with his VA physician in June 2015. He reported that he felt calmer and less depressed thanks to his medication. The appellant reported getting six hours of interrupted sleep per night and had nightmares and flashbacks twice per month. No abnormal motor movement was noted. The appellant's eye contact was fair, speech was of normal rate and volume, thought process was coherent, and thought content was focused on his anxiety and depression. The appellant denied active suicidal or homicidal ideation. No overt psychosis was noted. The appellant's mood was fair with a near-tearful affect. The appellant's cognitive abilities were grossly intact, his memory was intact, and his insight and judgment were fair. A GAF score of 48 was assigned.

In August 2015, the appellant reported to his VA physician that he had to stop taking his medication because he was falling asleep at work, although he planned to take a lower dosage. The appellant noted worries regarding his wife's health. The appellant reported six hours of interrupted sleep on average and nightmares and flashbacks twice a month. The appellant stated that his energy and motivation were improving. The appellant's concentration was fair. He reported that he got emotional easily when reminded of his stressor. The appellant reported that he had anger issues since he stopped complying with his prescribed medication. The appellant reported that he continued to work part-time as a night auditor. The appellant was alert and oriented to person, place, and time. The appellant was casually dressed and tidy. No abnormal motor movement was noted. The appellant had fair eye contact and his speech was of normal rate and volume. His thought process was coherent and focused on his anxiety and depression. The appellant denied suicidal or homicidal intent. No overt psychosis was noted. The appellant's mood was described as fair with a near-tearful affect. He was cognitively grossly intact and his memory was intact. The appellant's insight and judgment were fair. The appellant was again assigned a GAF score of 48. Although suicidal and homicidal intent was denied and the VA physician stated that the appellant was not acutely at risk of harm to self or others, the VA physician determined that an ongoing safety risk assessment would be prudent due to his history. The appellant was described as a happily married man with a long history of good employment. His mood was described as fair with a near-tearful affect.

The appellant also saw his new VA psychologist again in August 2015. The appellant reported managing mood and stress adequately. Although he had to cover for a co-worker recently and experienced some stress from that, the appellant stated that everything was going well otherwise. The appellant denied any significant depression, anxiety, or PTSD symptoms. The appellant noted upcoming plans for social activities with friends and family and that he was looking forward to them. The appellant had appropriate hygiene and attire. His behavior was appropriate, and cooperative. The appellant's movement was ambulatory with normal psychomotor activity. His speech was normal and spontaneous, while the rate and rhythm were within normal limits. His thought process was logical and coherent. Suicidal and homicidal ideation were denied, as were delusions and obsessions. The appellant denied auditory, visual, or tactile hallucinations. The appellant was alert and oriented to person, place, time, and situation. The appellant's memory was grossly intact, his attention fair, and his fund of knowledge was consistent with his background with no gross impairment. His insight and judgment were fair. His mood was euthymic and his affect was appropriate.

In January 2016, the appellant reported to his VA physician that he was feeling better and was tolerating the lower dosage of his medication. The appellant reported eight hours of interrupted sleep per night and that his nightmares and flashbacks were diminished, although they occurred twice per month. The appellant stated that his energy level and motivation were improving. The appellant's concentration was fair and he could get emotional easily with respect to his in-service trauma. The appellant stated that he had good and bad days. The appellant reported that his anger was better controlled thanks to his medication. The appellant's mood was fair, with appropriate affect. The appellant was alert, and oriented to person, place, and time. He was tidy and casually dressed. No abnormal motor movement was noted. He had fair eye contact and his speech was of normal rate and volume. The appellant's thought process was coherent and focused on his mild mood improvement. The appellant denied active suicidal or homicidal ideation and no overt psychosis was noted. The appellant was cognitively and grossly intact. The appellant's memories were intact and his insight and judgment were fair. The appellant was again assigned a GAF score of 48. 

Also in January 2016, the appellant was again seen by his new VA psychologist. He reported that he was doing better overall but continued to have bad days when reminded of his trauma and loss, both related to service and not related to service. The appellant presented with appropriate hygiene and attire. His behavior was appropriate and cooperative. His movement was ambulatory with normal psychomotor activity. His speech was normal and spontaneous, with rate and rhythm within normal limits. The appellant's mood was "okay" and his affect was appropriate and congruent with his mood. The appellant's thought process was logical and coherent. The appellant denied suicidal or homicidal ideation, and also denied delusions and obsessions. The appellant denied auditory, visual, or tactile hallucinations. He was alert, oriented to person, place, time, and situation, his memory was grossly intact, his attention fair, his fund of knowledge was consistent with his background with no gross impairment, and his insight and judgment were fair.

In May 2016, the appellant was seen by his new VA psychologist again. The appellant presented with symptoms of anxiety and depressed mood. He reported four hours of sleep on average but did not awaken rested. The appellant stated that coughing spells were waking him up more frequently. The appellant reported nightmares and flashbacks twice per month. The appellant stated that he had been doing better for the past couple of weeks, but was miserable due to a stroke at the end of March. He also reported that he threw his back out and was bedridden for weeks. The appellant stated that he had not worked since the end of February and could go back to work soon, but instead decided to retire. He stated that he could not drive very far and did not want to have to worry about continuing to recover from his stroke and back problems while working the graveyard shift. The appellant presented with appropriate hygiene and attire. His behavior was appropriate and cooperative. His movement was ambulatory with normal psychomotor activity. His speech was normal and spontaneous, with rate and rhythm within normal limits. The appellant's mood was "okay" and his affect was appropriate. His thought process was logical and coherent. The appellant denied homicidal or suicidal ideations and denied delusions and obsessions. The appellant denied auditory, visual, or tactile hallucinations. The appellant was alert, oriented to person, time, place, and situation, and his memory was grossly intact, his attention was fair, his fund of knowledge was consistent with his background with no gross impairment, and his insight and judgment were fair.

The appellant had an appointment with his VA physician a week later in May 2016. He reported five hours of interrupted sleep per night and that he experienced increased nightmares and flashbacks twice per week. He reported breaking his back and having a transient ischemic attack (mini-stroke). He stated that, although he wants to go back to work, he does not think his employer will let him. He reported that he had good and bad days and that his anger was better controlled by his medication. He was alert and oriented to person, place, and time. He was casually dressed and tidy, with no abnormal motor movement noted. He had fair eye contact and his speech was of normal rate and volume. His thought process was coherent and focused on his mild mood improvement. The appellant denied active suicidal or homicidal ideation and no overt psychosis was noted. His mood was "fair" his affect was appropriate. He was cognitively grossly intact and his memories were also intact, while his insight and judgment were fair. A GAF score of 48 was again assigned.

The appellant was seen by his VA physician in August 2016. He reported that he finally decided to retire and that the past month had not been good because his dog had died. The appellant reported six to seven hours of interrupted sleep per night and nightmares and flashbacks twice per week. The appellant described his energy and motivation as "even." The appellant stated his concentration was "pretty good" and that he gets emotional easily when reminded of his trauma. The appellant reported having good and bad days and that his anger was better controlled by his medication. The appellant noted that he was worried about his transient ischemic attack (mini-stroke) history. The appellant was noted to be compliant with his medication. The appellant was alert to person, time, and place. The appellant was casually dressed, tidy, and the VA physician stated that no abnormal motor movement was noted. Eye contact was fair and speech was of normal rate and volume. The appellant's thought process was coherent and focused on his mild mood improvement. Again, suicidal or homicidal ideation was denied. No overt psychosis was noted. The appellant's mood was described as fair with appropriate affect. The appellant's cognitive ability was grossly intact, and his memory was intact. The appellant's insight and judgment were fair. A GAF score of 48 was again assigned.

The appellant saw his new VA psychologist again in August 2016. He reported that he had been grieving for his dog for the past month and had stopped working a month and a half before due to his mini-strokes. The appellant stated that he was coping by staying busy, taking care of household tasks and planning activities with his wife. The appellant reported that he continued to experience nightmares and guilt regarding his service. The appellant presented with appropriate hygiene and attire and his behavior was noted to be appropriate. The appellant's movement was ambulatory with normal psychomotor activity. His speech was normal and spontaneous and the rate and rhythm were within normal limits. The appellant's mood was described as sad. His affect was appropriate and congruent with his mood. The appellant's thought process was again logical and congruent. The appellant again denied suicidal or homicidal ideation, and denied delusions or obsessions. The appellant was alert and oriented to person, place, time, and situation. The appellant denied auditory, visual, or tactile hallucinations. The appellant's memory was grossly intact, his attention was fair, his fund of knowledge was consistent with his background without gross impairment, and his insight and judgment were fair.

The appellant was afforded a contracted examination in August 2016. The appellant's electronic claims file was reviewed. The psychologist who examined the appellant stated that occupational and social impairment with reduced reliability and productivity best summarized the appellant's level of occupational and social impairment. The appellant reported problems with sleep, including sleeping for approximately five hours per night, having difficulty falling back asleep, and experiencing "restless" sleep. The appellant reported that he continued to experience nightmares. The appellant stated that he experienced flashbacks once per week, especially when he wakes up in the middle of the night. Hypervigilance, suspiciousness, and feeling uneasy in crowded places were reported. The appellant stated that he would sit with his back to a wall where he could survey the area. The appellant expressed significant guilt for marital difficulties and for how much trouble he put his wife through. The appellant noted that he has difficulty writing a letter to the parents of his friend who died in service due to significant emotional reactivity, despite wishing to write the letter. Suicidal ideation, plans, and intent were denied. The appellant reported bouts of depression occurring consistently since separation from service although he has tried to pull himself out of depressed mood. The appellant reported that he saw his VA psychologist and VA physician every three months and was currently prescribed medication for his PTSD. The appellant denied alcohol use, illicit substance use, legal issues, or arrests since 2010. The appellant reported that he had been married for 47 years and that he continued to have a positive relationship with his wife, who has been very understanding of his PTSD disability. The appellant reported that he has a very close relationship with his daughter and that he has positive relationships with his siblings. The appellant described his social life as "good." The appellant stated that he and his wife would go out to visit with relatives, and has kept in touch with a couple of colleagues, but that he spends most of his social life with his wife.

 
B. Analysis

Upon a thorough review of the entire claims file, the Board finds that the appellant's PTSD symptoms are more nearly approximated by the 50 percent rating criteria since the onset of entitlement to service connection and for the entire period prior to August 20, 2012. 

 i. Prior to August 20, 2012

Entitlement to service connection for PTSD was granted, effective September 13, 2010, and a disability rating of 30 percent was assigned. The appellant had an appointment with a VA psychologist in September 2010, as discussed above. A GAF score of 45 was assigned.

The opinions of the VA psychologist, whom the appellant saw regularly, support the conclusion that the appellant's symptomatology was more severe than an occasional decrease in work efficiency or intermittent periods of inability to perform occupational tasks due to PTSD signs and symptoms, but generally satisfactory function, as routine behavior, self-care, and conversation were normal. Indeed, the opinions of the VA psychologist support the conclusion that the appellant's PTSD symptomatology more nearly approximates occupational and social impairment with reduced reliability and productivity.

Although the appellant's GAF score fluctuated between 45 and 55 prior to August 20, 2012, and the June 2011 contracted examiner concluded that there was an occasional decrease in work efficiency or intermittent periods of inability to perform occupational tasks due to PTSD signs and symptoms, but generally satisfactory function, as routine behavior, self-care, and conversation were normal, upon weighing all of the evidence, the Board finds that the appellant's PTSD symptomatology more nearly approximates occupational and social impairment with reduced reliability and productivity prior to August 20, 2012.

The appellant consistently reported symptoms with similar severity before and after August 20, 2012, particularly evidenced by the September 2010 clinical note discussed above. As the appellant's disability rating was increased to 50 percent effective August 20, 2012, and he experienced a similar level of severity of his symptoms from September 2010 until August 20, 2012, it logically follows that the appellant should be rated at 50 percent for the period prior to August 20, 2012, as well.

The preponderance of the evidence is against the conclusion that the appellant's PTSD was more nearly approximated by occupational and social impairment, with deficiencies in most areas. For example, the appellant successfully maintained full-time employment and he had good relationships with his wife, daughter, and friends. The appellant did not have trouble with functioning independently, appropriately, and effectively. The Board has considered the appellant's reported irritability but finds that absent any indication of violence, this symptom does not rise to the level of a 70 percent evaluation. In addition, the appellant consistently denied suicidal ideation, had no problem with speech, spatial orientation, personal appearance, interpersonal relationships, or hygiene. Here, it is clear that the appellant does not have impairment in "most areas." See Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116 (Fed. Cir. 2013). 

 ii. Beginning August 20, 2012

With respect to the time period beginning August 20, 2012, the preponderance of the evidence shows that the appellant's PTSD disability was characterized by occupational and social impairment with reduced reliability and productivity. The evidence of record does not support the conclusion that the appellant's PTSD disability was characterized by deficiencies in most areas. The appellant continued to have positive relationships with family and friends. The appellant's thinking and judgment were not impaired. Although the appellant noted problems at work in August 2012, there is no indication that his PTSD symptoms were the source of these problems as he also noted that others at work were having the same problems with stress because of new ownership. The appellant did retire, albeit involuntarily, but it was due to health concerns unrelated to his PTSD. 

As noted in an April 2015 clinical note, the appellant was having trouble sleeping and his activities were limited, but this was also due to pain in his back, neck, arms, and legs which interfered with his sleep and limited his activities. The appellant reported that experienced nightmares and flashbacks, sometimes twice per month, and sometimes as often as twice per week. The appellant also reported anger problems, but noted that his anger was generally controlled with medication. The appellant's mood fluctuated during the period on appeal, but even when his mood was poor, there was no indication that he exhibited near-continuous depression which affected his ability to function independently, appropriately and effectively. In addition, although the appellant exhibited an episode of abnormal motor movement during the August 2012 examination, the VA physician and psychologist specifically noted that they did not observe abnormal motor movements during subsequent appointments. Again, for this time period as well, it is clear that the appellant does not have impairment in "most areas." See Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116 (Fed. Cir. 2013). During this time period as well, the appellant consistently denied suicidal ideation, had no problem with speech, spatial orientation, personal appearance, interpersonal relationships, or hygiene.

In reaching its decision, the Board has considered the appellant's arguments to the effect that in an August 2011 treatment note, he discussed his prior alcohol addiction upon returning home from active service in Thailand. Although the Board has considered this history, the appellant has maintained his sobriety for many years. For example, he reported in his June 2011 contracted examination that he had not consumed alcohol in 26 years. Moreover, he has consistently denied consuming alcohol during the period on appeal. Absent any indication of impairment related to the appellant's alcohol addiction which is associated with his service-connected PTSD, the Board finds no basis upon which to assign a rating in excess of 50 percent during any period on appeal.

The same is true with respect to the appellant's past suicidal ideation. The Board has considered the appellant's arguments to the effect that an April 2015 treatment note reflects that shortly after his separation from service, he intentionally attempted to crash his car while intoxicated in an effort to commit suicide. The appellant argues that, because of this event, and because his prognosis for improvement has been described as poor, that future suicidal ideations are possible. As set forth above, however, the contemporaneous lay and clinical evidence corresponding to the period on appeal shows that the appellant has consistently and specifically denied present suicidal ideation. Although the Board has considered the appellant's history, it finds that the most probative evidence with respect to the issue currently on appeal indicates that during the period in question, the appellant has not exhibited suicidal ideation warranting a rating in excess of 50 percent. 

The appellant also notes that the August 2012 examiner failed to check off boxes on the Disability Benefits Questionnaire with respect to difficulty adapting to stressful situations in his work environment. The appellant's attorney argues that this makes "the conditions seem less severe than it truly is," given the appellant's reports of symptoms such as impaired sleep, avoidance, and stress in his work environment. However, the Board has reviewed the examiner's entire report and, as reflected above, has carefully considered the appellant's reported work-related difficulties. In that regard, during that examination, the appellant explained that "[e]verybody is under stress," "it is not fun anymore to go to work," and the cause of the stress was the new ownership, not his PTSD.

The appellant has also pointed out that his first VA psychologist, in a March 2015 clinical note, opined that the appellant could no longer maintain full-time gainful employment or maintain effective relationships. Although the Board has carefully considered this evidence, as set forth above, the record shows that the appellant consistently reported positive relationships with his wife, daughter, and friends, as noted by that VA psychologist and the other medical professionals who examined and treated the appellant. Moreover, the record reflects that the appellant continued to maintain employment successfully until he retired due to disability associated with physical conditions. For the reasons and bases set forth above, he Board finds that the overall weight of the evidence supports the assignment of a rating of 50 percent for the entire period of the appeal. 

In reaching its decision, the Board has also considered the provisions of 38 C.F.R. § 3.321 (b)(1). In this case, however, the Board finds that the record does not show that the appellant's PTSD is so exceptional or unusual as to warrant the assignment of a higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321 (b)(1). 

The threshold factor for extra-schedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service- connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extra-schedular referral is required. Id. Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extra-schedular regulation as "governing norms" (which include marked interference with employment and frequent periods of hospitalization).

The evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected PTSD is inadequate. A comparison between the level of severity and symptomatology of the appellant's assigned rating with the established criteria found in the rating schedule shows that the rating criteria reasonably describe the appellant's disability level and symptomatology.

The rating criteria address the appellant's complaints and symptoms, including depression, impaired impulse control, difficulty adapting to stressful circumstances, and disturbances of motivation and mood. Indeed, the rating criteria contemplate the overall effect of all of his symptomatology on his occupational and social functioning. As discussed above, there are higher ratings available under the diagnostic code, but the appellant's disability is not productive of such manifestations.

In light of the record, the Board has also considered a total rating based on individual unemployability due to the appellant's PTSD, pursuant to Rice v. Shinseki, 22 Vet. App. 447, 453-454 (2009). However, as discussed above, the overall evidence of record reflects that the appellant is not unemployable as a result of his service-connected PTSD. Rather, the record reflects that the appellant was successfully employed full-time for decades and then employed part-time until he retired in May 2016 because he had suffered from transient ischemic attacks (mini-strokes), as he reported in an August 2016 clinical note. The most probative evidence reflects that the appellant was not forced to retire due to his service-connected PTSD and that he is not unable to work due solely to his service-connected PTSD. Thus, TDIU is not warranted. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009).


ORDER

Entitlement to an initial rating of 50 percent for the period prior to August 20, 2012, for PTSD is granted, subject to the law and regulations governing the payment of monetary benefits.

Entitlement to a rating in excess of 50 percent for the period beginning August 20, 2012, for PTSD is denied.


REMAND

The appellant claims that during his tour of duty at the Takhli Royal Thai Air Force Base from December 1968 to February 1969, he was exposed to herbicides, which caused him to develop diabetes mellitus, type II, and peripheral neuropathy. 

Pursuant to 38 C.F.R. § 3.309(e), if a Veteran was exposed to an herbicide agent during active service, certain enumerated diseases shall be service connected if the requirements of 38 U.S.C.A. § 1116, 38 C.F.R. § 3.307(a)(6)(iii) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307(d) are also satisfied. The enumerated diseases include diabetes mellitus and early onset peripheral neuropathy. 

For purposes of presumptive service connection, "herbicide agent" is specifically defined as "a chemical in an herbicide used in support of the United States and allied military operations in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, specifically: 2,4-D; 2,4,5-T and its contaminant TCDD; cacodylic acid; and picloram." 38 C.F.R. § 3.307(a) (6). 

A veteran who, during active military service, served in the Republic of Vietnam during the Vietnam Era or in a unit that operated in or near the Korean DMZ between April 1, 1968, and August 31, 1971, is presumed to have been exposed to an herbicide agent. 38 U.S.C.A. § 1116(f); 38 C.F.R. § 3.307(a)(6). Although a Veteran who served in Thailand during the Vietnam era is not entitled to the legal presumption of exposure to an herbicide agent, VA's Adjudication Procedure Manual, M21-1, provides that exposure to an herbicide agent may be considered on a direct/facts-found basis if a Veteran served with the U.S. Air Force in Thailand during the Vietnam Era at one of the Royal Thai Air Force Bases (including Takhli) as an Air Force security policeman, security patrol dog handler, member of the security police squadron, or otherwise near the air base perimeter as shown by evidence of daily work duties, performance evaluation reports, or other credible evidence. M21-1, Part IV, Subpart ii, Chapter 1, Section H; see also Compensation and Pension Bulletin, New Procedures for Claims Based on Herbicide Exposure in Thailand and Korea (May 2010). The May 2010 C&P Service Bulletin states that there is "some evidence that the herbicides used on the Thailand base perimeters may have been either tactical, procured from Vietnam, or a commercial variant of much greater strength and with characteristics of tactical herbicides." See also Parseeya-Picchione v. McDonald, 28 Vet. App. 171, 177 (2016).

In this case, pursuant to VA's duty to assist, the RO undertook evidentiary development action to assist the Veteran in obtaining evidence which could establish exposure to an herbicide agent during his tour of duty at the Takhli Royal Thai Air Force Base from December 1968 to February 1969 on a direct/facts-found basis. 

Pursuant to those efforts, the RO obtained a March 2016 email from an archivist at the Air Force Historical Research Agency who expressly stated that the Takhli Royal Thai Air Force Base did not use any type of herbicides until April 1969, after the appellant had left the facility. However, the archivist did not provide the source of this information. Although the Board is not bound by the M21-1, given the notations therein to the effect that there is some evidence tactical or commercial herbicides were employed on Thailand base perimeters during the Vietnam era, the Board finds that clarification is needed in order to determine specifically whether herbicide agents were used on the perimeter of the Takhli Royal Thai Air Force Base between December 1968 and February 1969, when the appellant was present at the air base.

Accordingly, the case is REMANDED for the following action:

1. The AOJ should request that the Air Force Historical Research Agency archivist who provided the March 2016 email provide the information on which he based his conclusion that the Takhli Royal Thai Air Force Base did not use any type of herbicides until April 1969. If that archivist is unavailable, another person at the Air Force Historical Research Agency should provide this information.

The information provided should be as specific as reasonably possible. An explanation of whether this information contradicts the May 2010 C&P Service Bulletin should also be included. If there is indeed a conflict, that conflict should be explained and resolved to the extent possible.

2. After conducting any additional development deemed necessary, the AOJ should reconsider the claims, considering all the evidence of record. If the benefits sought remain denied, a Supplemental Statement of the Case should be provided followed by an appropriate period of time to respond before the case is returned to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
K. Conner
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs